STATE OF MAINE

*vs.*

INTOXICATING LIQUORS, and JAMES GARLAND, claimant.

*New trial in Superior Court. Agency. Delivery. Intention. Intoxicating*
*Liquors.*

This court has no jurisdiction over a motion to set aside a verdict in a crimi-
nal case, rendered in the superior court, on the ground that it is against
evidence; such motion can only be addressed to the justice of that court.

It is a question of fact for the jury whether or not, when goods have been
entrusted to a common carrier to be carried to a consignee, that is a deliv-
ery to the consignee for himself or as agent for another, though the exist-
ence of any such agency has never been disclosed to the vendors.

The disposition to be made of liquors libeled, as kept for unlawful sale, must
be decided by the determination of the jury as to the intention, in this re-
spect, of the person who owns them, or who has authority from the owner
to sell them. A design on the part of one who is a mere bailee of the own-
er (without authority from him to make sales) illegally to sell such liquors
in this State, will not work a forfeiture.

ON EXCEPTIONS AND MOTION FOR A NEW TRIAL, on the ground
that the verdict rendered for the State upon the trial of this case
at the January term, 1873, of the superior court for this county
was against the law and the weight of evidence. The facts and
rulings are indicated in the opinion.

*Charles F. Libby,* county attorney, for the State.

*J. B. Eaton,* for the claimant.

APPLETON, C. J. This is a libel for the condemnation of cer-
tain intoxicating liquors claimed by James Garland. The case
comes before us on exceptions.

Whether the verdict was against evidence, or the weight of
evidence, is not a question for us to determine. By the act cre-
ating the superior court for Cumberland county, approved Feb-

ruary 14, 1868, c. 151, § 9, the supreme judicial court have the same jurisdiction of all motions for new trials originating in the superior court, as if they had originated in the supreme judicial court. But in criminal cases it was determined in *State* v. *Smith*· that this court sitting *in banc* has no jurisdiction of a motion to set aside a verdict as against evidence or the weight of evidence, but that such motion must be decided by the justice presiding at *nisi prius*. It follows, that all questions as to the sufficiency of the evidence to justify· the verdict must be presented to, and determined by, the justice of the superior court.

The questions presented to the jury for their determination were, whether the liquors seized were the property of James M. Jewett or of the claimant, James Garland, and whether or not, whoever might be the owner, they were intended by him to be sold in this State in violation of its laws.

There were but two witnesses on the subject of ownership. James M. Jewett called by the State testified, among other things, that he ordered the liquors of Dunbar & Co., for the claimant; that when they were sent from Boston to Portland he was to do with the liquors whatever Garland ordered; that he was doing business with Garland, who said he was using considerable liquor, and wanted him (witness) to get it for him, so that he (Garland) could save something; that he had a commission for doing the business. The witness further states that Dunbar & Co. did not know Garland; that they relied on him (Jewett) for pay; that the bills were made out to him, (Jewett.)

James Garland, the claimant, testified that he resided in New Hampshire; that he was a pedlar of essences, patent medicines, &c.; that he used liquors in his business; that Jewett could obtain liquors for him at a discount, if he would take them in quantity, and that he engaged him to do it.

One of the questions in issue was, whether Jewett purchased the liquors in Boston for himself, or whether in the purchase he was acting as the agent of Garland. The controversy was, as to the ownership of the liquors. It was essential to the right deter-

mination of the cause to ascertain who was the owner, because as the intent to sell in violation of law was the ground of forfeiture, it must be the intent of the person owning or having authority to dispose of the liquors; not of one having no title to them, nor authority to dispose of them by way of sale.

The judge, after calling attention to the evidence of Jewett, said: "The delivery of the liquors by the parties in Boston to the steamboat company was, of course, a delivery to Jewett." This was a settlement of the fact in issue by the judge. It was a withdrawal of its determination from the jury. It may or may not have been rightly determined, but that is not the question. It should have been left to the jury, under proper instructions.

Though the goods may have been purchased by an agent without disclosing the name of his principal, yet the principal would be bound for their price if they came into his possession, or the agent was acting in their purchase within the scope of his authority. 2 Kent Com., 631. It is obvious, therefore, that it was not absolutely necessary that Dunbar & Co. should know that Jewett was purchasing for, and as the agent of Garland, to vest the title in him, if in fact he was so purchasing. Hence the importance of a correct instruction, for if the purchase was by the agent for his principal, then the delivery to the agent would be to him, not in his own right but for his principal.

The court further instructed the jury, as follows: "If you find they (the liquors) were intended for unlawful sale within the limits of this State, it will be unnecessary for you to inquire into the ownership of them, because, in that case they could not be recovered by the claimant here. If you find they were not intended for unlawful sale within the limits of this State, then you will come to the question whether or not Garland is the owner of them and entitled to the possession of them."

As the case was presented, it is evident the liquors belonged either to Jewett or Garland. The intent to violate the law must be the intent of the one or of the other. If Garland was the legal owner, entitled to the possession of the liquors and having no

intent to sell them in this State in violation of law, it cannot affect his rights that Jewett or any other stranger, without right or title should have an intent to sell the same in this State in violation of its laws. It is the intent of one having the title or authority to sell or dispose of the liquors in violation of law, which is to be regarded, not that of a mere wrong-doer, having no authority whatever to dispose of them. Now the judge told the jury that it would be unnecessary to inquire into the ownership of the liquors, if intended for sale within this State in violation of its laws. But this was the very thing to ascertain, preliminary to settling whether there was an illegal intent which would justify or require a forfeiture. By the instruction as given, the owner, having no intent to violate the law, because somebody else, who had no title to, or legal control over, the liquors had such intent, might find his liquors forfeited without any wrongful act or thought on his part.                                          *Exceptions sustained.*

WALTON, DICKERSON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.